1 | **DISABILITY RIGHTS LEGAL CENTER**
PAULA D. PEARLMAN (SBN 109038)
2 | Paula.Pearlman@lls.edu
SHAWNA L. PARKS (SBN 208301)
3 | Shawna.Parks@lls.edu
AUTUMN M. ELLIOTT (SBN 230043)
4 | Autumn.Elliott@lls.edu
919 Albany Street
5 | Los Angeles, California 90015
Telephone: (213)-736-1031
6 | Facsimile: (213)-736-1428

7 | Attorneys for Plaintiff
Susan Monroe

8

9

10

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | SUSAN MONROE, | CASE NO. **CV10-4654 SJO (SSx)**

14 | Plaintiff; | ***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

15 | v.

16 | THE IRVINE COMPANY APARTMENT COMMUNITIES, | **Filed concurrently with Complaint and [Proposed] Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction**
17 | INC., THE IRVINE COMPANY, LLC, and DOES 1 through 20,
18 | inclusive;

19 | Defendants.

20

21

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

RULE 65 CERTIFICATE OF EFFORTS TO NOTIFY OPPOSING
COUNSEL OF PLAINTIFF'S APPLICATION FOR TRO ..................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 3

I.    INTRODUCTION ................................................................................. 3

II.   STATEMENT OF FACTS ..................................................................... 4

    A.    Plaintiff's Housing Circumstances ................................................. 4

    B.    Plaintiff's Physical and Mental Disabilities ................................... 4

    C.    Defendants' Knowledge of Ms. Monroe's Disabilities and
        Related Sensitivity to Second-hand Tobacco Smoke ...................... 5

    D.    Defendants' Discriminatory Conduct .............................................. 6

    E.    Consequences of Defendants' Discriminatory Actions ................... 7

III.  LEGAL ARGUMENT ........................................................................... 8

    A.    Plaintiff Is Likely to Succeed on the Merits of her Claims ............. 9

        1.    Plaintiff Is Likely to Succeed on Her Fair Housing
             Act Claims and Related State Law Claims. ......................... 9

             a) The Fair Housing Act ...................................................... 9

             b) Related State Law Claims .............................................. 13

        2.    Plaintiff Is Likely to Succeed on her Cal. Civ. Code
             Sec. 1954.535 Claim for Declaratory Relief .................... 15

        3.    Plaintiff Is Likely to Succeed on her Cal. Bus. & Prof.
             Code Section 17200 Claim .............................................. 15

    B.    Plaintiff Is Likely to Suffer Irreparable Harm in the Absence
        of Preliminary Relief ...................................................................... 15

    C.    The Balance of Equities Favors Injunction .................................... 17

    D.    An Injunction Is in the Public Interest ............................................ 19

    E.    Plaintiff Should Not Be Required to Give Security ........................ 19

i

IV.   CONCLUSION ........................................................................... 20

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF AUTHORITIES

**CASES**

*Brown v. Artery Org.*, 654 F. Supp. 1106, 1118-1119 (D.D.C. 1987) ..................... 16

*California Housing Rights Ctr. V. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 1061 (C.D. Cal. 2005) ......................................................... 13

*Chalk v. U.S. Dist. Ct.*, 840 F. 2d 701, 704 (9th Cir. 1988) ................................. 8, 17

*Edwards v. Habib*, 366 F.2d 628, 631 (C.A.D.C. 1965) .......................................... 16

*Housing Rights Center v. Donald Sterling Corp.*, 274 F.Supp.2d 1129, 1140 (C.D. Cal. 2003) (Matz, J.) .......................................................... 16

*Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774 (11th Cir. 1984) ............................ 16

*Los Angeles Unified Sch. Dist. v. U.S. Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981) ......................................................................... 8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..................................... 11

*Mitchell v. U.S. Dep't of Housing and Urban Dev.*, 569 F. Supp. 701, 704-5 (N.D. Cal. 1983) ..................................................................... 17

*Price v. City of Stockton, Calif.*, 394 F. Supp. 2d 1256, 1269 (E.D. Cal. 2005) ..................................................................................... 16

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ....................................................................... 16

*Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 212 (1972) ......................... 10, 19

*United States v. Cal. Mobile Home Park Mgmt. Co. II*, 107 F.3d 1374, 1380 (9th Cir. 1997) ................................................................. 10

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001) ................................ 11

*Wasatch Prop. Mgmt. v. Degrate*, 35 Cal.4th 1111, 1115 (2005) .......................... 15

*Winter v. Nat'l Res. Def. Council*, 129 S.Ct. 365, 374 (2008) ................................ 8

**STATUTES**

42 U.S.C. § 3602(h) ................................................................................. 10

42 U.S.C. § 3604 ........................................................................................ 9

42 U.S.C. § 3617 ...................................................................................... 10

42 U.S.C. § 3604(a) and (b) ........................................................................ 9

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

Fair Housing Act...................................................................................passim

**RULES**

Fed. R. Civ. Proc. 65(c) ...................................................................... 19

**REGULATIONS**

24 C.F.R. § 982.311(b) ........................................................................ 18

24 C.F.R. 100.60 ................................................................................... 9

**STATE CODES**

Cal. Civ. Code § 54.1 (b) ..................................................................... 14

Cal. Civ. Code § 54.1 (b)(3)(B) ........................................................... 14

Cal. Civil Code § 51 et seq. .................................................................. 14

Cal. Code Civ. Proc. §1170.5(a)........................................................... 17

Cal. Gov't Code §12926 ....................................................................... 13

Cal. Gov't Code §12927 ....................................................................... 13

California Business and Professions Code §§ 17200 and 17203 ........... 15

California Business and Professions Code §17200 ................................ 16

California Civil Code § 1954.535 .......................................................... 15

California Disabled Persons Act ("DPA") ............................................. 14

California Fair Employment and Housing Act (FEHA)......................... 13

Unruh Civil Rights Act ................................................................... 14, 16

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2   PLEASE TAKE NOTICE that Plaintiff Susan Monroe hereby requests that

3 the Court immediately issue a temporary restraining order enjoining Defendants

4 from evicting Ms. Monroe from her unit at 1147 Corella in Newport Beach,

5 California 92658.

6   This application is supported by the accompanying Attorney Certification;

7 Memorandum of Points and Authorities; the Declarations of Defendant Susan

8 Monroe and Judith Gonzalez; the proposed Temporary Restraining Order and Order

9 to Show Cause re: Preliminary Injunction; all papers, records, and documents filed

10 in this action; and such other information as may be presented at oral argument.

11

12 Dated:  June 23, 2010    **DISABILITY RIGHTS LEGAL CENTER**

13

14         By: _____

15           Autumn M. Elliott

16          Attorneys for Plaintiff Susan Monroe

17

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

## RULE 65 CERTIFICATE OF EFFORTS TO NOTIFY OPPOSING COUNSEL OF PLAINTIFF'S APPLICATION FOR TRO

Gregory Hurley, attorney with Greenberg Traurig LLP, 3161 Michelson Dr., Ste. 1000, Irvine, CA 92612, (949)732-6614, told counsel for Plaintiff on June 18, 2010 that he represents Defendants in this matter.  On that date, counsel for Plaintiff informed Mr. Hurley that Plaintiff would seek a temporary restraining order enjoining Defendants from evicting Plaintiff if Defendants did not withdraw all notices to vacate issued to Plaintiff by 10 a.m. on June 22, 2010.

At 10 a.m. on June 22, 2010, Plaintiff's counsel telephoned Mr. Hurley at (949)732-6614, the number provided by Mr. Hurley, and left a message informing Mr. Hurley that on the morning of June 23, 2010 Plaintiff would file an application for a temporary restraining order requesting that Defendants be enjoined from evicting Plaintiff and to set a hearing regarding an order to show cause why such injunction should not continue for the remainder of the case.  At 12:30 p.m. on June 22, 2010, Mr. Hurley left a voice mail message for Plaintiff's counsel indicating that he received the telephonic notice and requesting an email copy of Plaintiff's complaint.  At 3:57 p.m. on June 22, 2010, Mr. Hurley emailed counsel for Plaintiff a letter stating that Defendants opposed Plaintiff's TRO application.

A regularly-noticed motion would be heard too late to provide meaningful relief, as Defendants have issued a notice to vacate to Plaintiff with a deadline of June 28, 2010.  Defendants will file an unlawful detainer once the deadline has passed unless restrained by order of this Court.

I certify that the foregoing is true and correct on June 23, 2010.

Autumn M. Elliott

Attorneys for Plaintiff Susan Monroe

-2-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Susan Monroe, a senior citizen with physical and mental disabilities, brings the underlying action to address Defendants' wrongful and illegal conduct. It is clear from the facts of this case and from Defendants' own statements that Defendants are terminating Ms. Monroe's tenancy because she made disability-related requests to her neighbors and to Defendants.

On a very limited number of occasions since moving in to her unit in 2007, Ms. Monroe has requested her neighbors not to smoke near her. She also has asked them whether Defendants notified them of her disability-related sensitivity to second-hand tobacco smoke. Defendants sent Ms. Monroe a letter stating that her requests had made some of her neighbors "very uncomfortable," and that further "harassment" would justify eviction. On April 21, 2010, Ms. Monroe asked a neighbor whether she had been informed of Ms. Monroe's disability-related need to avoid tobacco smoke by property management. Approximately one week later, Defendants served Ms. Monroe with a notice to vacate her unit. These actions are proscribed by the federal Fair Housing Act and by California civil rights laws. Additionally, the notices to vacate are invalid on their face.

In this application, Ms. Monroe seeks to prevent Defendants from evicting her because she asked her neighbors not to smoke near her due to her disabilities and because she exercised her fair housing rights. Defendants' actions in terminating Ms. Monroe's tenancy are particularly egregious because Ms. Monroe is indigent and can only afford her current unit because it is offered at below market rent as part of a program to provide housing for very low income people. Ms. Monroe spent five years on a waiting list waiting for her apartment. If Defendants are permitted to evict Ms. Monroe, she will be rendered homeless, at least temporarily and possibly permanently. The Court must issue a temporary restraining order enjoining

1  Defendants from evicting Ms. Monroe, thereby maintaining the status quo so that
2  Ms. Monroe can have these issues heard in court.

3  **II. STATEMENT OF FACTS**

4      **A. Plaintiff's Housing Circumstances**

5      Ms. Monroe currently receives $845 per month from Supplemental Security
6  Income (SSI). Monroe Decl. at ¶2. This is her sole source of income. *Id.* Because
7  Ms. Monroe is indigent, she depends upon housing programs designed to provide
8  decent, affordable housing to those in need.

9      Ms. Monroe has a federally subsidized housing voucher (known as a
10 "Section 8" voucher) administered by the Orange County Housing Authority
11 ("OCHA"). *Id.* at ¶3. The voucher allows her to lease a privately-owned rental unit
12 so long as the rent for the unit is below a payment standard set by OCHA. *Id.* Ms.
13 Monroe pays approximately one-third of her income in rent, with the remainder of
14 the rent paid by OCHA. *Id.*

15     Ms. Monroe has been a tenant of the Irvine Company since she first received
16 her Section 8 voucher in 2002. *Id.* at ¶5. She has lived in her current unit at 1147
17 Corella, Newport Beach, California since 2007. *Id.* at ¶6. Her home is located in
18 the Newport North apartment complex, which is owned and operated by Defendants.
19 *Id.* Ms. Monroe was on the waiting list for a below market rent unit at Newport
20 North for five years before she was able to live there. *Id.* at ¶7. Ms. Monroe would
21 not be able to use her voucher at a market rent unit in Newport North because the
22 rent for such units exceeds the payment standard allowed by OCHA. *Id.* at ¶¶ 4, 7.
23 Her below market rent unit is part of a government-sponsored bond program to
24 make housing more available to very low income people. *Id.* at ¶9.

25     **B. Plaintiff's Physical and Mental Disabilities**

26     Ms. Monroe is 67 years old and has physical disabilities, including asthma,
27 that substantially impair her respiratory functions. *Id.* at ¶14. Because of these
28 disabilities, second-hand tobacco smoke can trigger an asthma attack and is

1  particularly detrimental to Ms. Monroe's physical health. *Id.* Ms. Monroe also has

2  major depression and receives SSI as a result. *Id.* at ¶15. Exposure to second-hand

3  tobacco smoke is very stressful for Ms. Monroe because she worries about the

4  impact tobacco smoke has on her physical health. *Id.* This causes anxiety and

5  worsens her mental health condition. *Id.*

### C. Defendants' Knowledge of Ms. Monroe's Disabilities and Related Sensitivity to Second-hand Tobacco Smoke

8       At all relevant times, Defendants knew of Ms. Monroe's physical and mental

9  disabilities and her related need to avoid second-hand tobacco smoke. On a number

10 of occasions, Ms. Monroe told the Irvine Company about her disabilities and her

11 consequent sensitivity to second-hand tobacco smoke, and provided verification of

12 this from her doctors. *Id.* at ¶16. In fact, Defendants provided disability

13 accommodations on a number of occasions during Ms. Monroe's tenancy based on

14 this knowledge.

15      For example, in September 2006, Ms. Monroe discussed her disability-

16 related need to avoid second-hand tobacco smoke with a regional manager at the

17 Irvine Company and asked that Defendants accommodate her disabilities. *Id.* at ¶17.

18 Ms. Monroe received a letter the following month stating that the property

19 management had sent a letter to the eight units in the building explaining that a

20 resident with a sensitivity to tobacco smoke lived there and asking them to be

21 considerate of that resident. *Id.* at ¶18.

22      Ms. Monroe moved to Newport North Apartments in 2007. *Id.* at ¶19.

23 However, the resident in the unit directly below hers was a heavy smoker, so she

24 moved to her current unit. *Id.* In order to do so she submitted a request that

25 Defendants accommodate her disability-related need to avoid second-hand tobacco

26 smoke and a verification letter from her doctor. *Id.*

27      Since moving to Newport North Apartments, Ms. Monroe has approached

28 her neighbors on fewer than ten occasions regarding smoking. *Id.* at ¶22. On such

1   occasions, she asked them not to smoke or inquired whether Defendants had

2   informed them that she was sensitive to second-hand tobacco smoke.  *Id.*  At no time

3   did Ms. Monroe act in an abusive or harassing manner.  *Id.*

### D. Defendants' Discriminatory Conduct

5        Defendants sent a letter to Ms. Monroe dated October 19, 2009 alleging that

6   some residents of Newport North were "very uncomfortable" with Ms. Monroe

7   approaching them regarding smoking, and that this "harassment" of neighbors was a

8   lease violation that would justify eviction.  Exhibit A.

9        On April 21, 2010, a neighbor who parks her car in front of Ms. Monroe's

10  unit exited her vehicle while smoking.  Monroe Decl. at ¶23.  Ms. Monroe asked the

11  woman whether Defendants had informed her that Ms. Monroe was sensitive to

12  tobacco smoke.  *Id.* at ¶23.  Approximately one week later, Defendants gave Ms.

13  Monroe a notice stating that her tenancy was being terminated in 60 days and that

14  she would have to vacate at that time. Exhibit B.  She received a second "60-Day

15  Notice of Lease Termination," dated April 29, 2010, which gave a reason for the

16  eviction: "harassing other tenants."  Exhibit C.  It is clear that Ms. Monroe's tenancy

17  was being terminated because of her alleged "harassment" of asking her neighbors

18  not to smoke.  Monroe Decl. at ¶24.

19       On June 16, 2010, Ms. Monroe requested through counsel that Defendants

20  withdraw their notices to vacate on the grounds that evicting her for asking her

21  neighbors not to smoke on a very limited number of occasions was discrimination

22  on the basis of disability.  Exhibit D.  In the alternative, if Defendants' position was

23  that Ms. Monroe's behavior exceeded Defendants' threshold for harassment and

24  their policy was always to evict tenants who exceeded that threshold, Ms. Monroe

25  asked that she be permitted to stay in her unit as an accommodation of her

26  disabilities.  *Id.*

27       Defendants responded through counsel on June 18, 2010, that Ms. Monroe

28  was being required to vacate her apartment because she had made a disability

-6-

1    accommodation request that Defendants believed was unreasonable.  Defendants

2    sent a same-day follow up letter stating that one of the reasons that Defendants were

3    terminating Ms. Monroe's tenancy was that Ms. Monroe had made a disability

4    accommodation request that Defendants could not grant.  Exhibit E.[1]  Defendants

5    refused to withdraw the notices to vacate unless Ms. Monroe agreed to move within

6    a short time.  *Id.*, Monroe Decl. at ¶24.

### E. Consequences of Defendants' Discriminatory Actions

8         If Ms. Monroe does not leave her unit by the June 28, 2010 deadline

9    provided in Defendants' notice to vacate, Defendants will file an unlawful detainer

10   action against her.  It will be extremely difficult for Ms. Monroe to rent another

11   apartment with an unlawful detainer action on her record, regardless of the outcome

12   of the lawsuit.  Gonzalez Decl. at ¶9, 17.  Moreover, if she were to lose an unlawful

13   detainer action, OCHA would terminate Ms. Monroe from the Section 8 voucher

14   program and Ms. Monroe would lose her federal housing subsidy.  *See* 24 C.F.R.

15   §982.552(b)(2) ("The PHA must terminate program assistance for a family evicted

16   from housing assisted under the program for serious violation of the lease.")

17        If Ms. Monroe does vacate her unit by June 28, 2010, she will be homeless,

18   possibly permanently.  *Id.* at ¶10.  Aside from her current unit, she has no place to

19   go and no place to store her belongings.  *Id.* at ¶11.  In order for Ms. Monroe to use

20   her Section 8 voucher elsewhere, she would have to find a landlord willing to accept

21   the voucher, and the landlord would have to have an available unit that was within

22   OCHA's payment standard.  *Id.* at ¶12.  The unit would also have to pass OCHA's

---

24   [1] Plaintiff attaches Mr. Hurley's letter as evidence of Defendants' admission that they are
     terminating Ms. Monroe's tenancy because she asked for disability accommodations.  (Mr.
25   Hurley also requested that Plaintiff include this letter in Plaintiff's TRO application.)  However,
     the letter is full of erroneous factual allegations.  Mr. Hurley has no personal knowledge of the
26   facts asserted in his letter, which is unsworn, and the Court should give them no weight.  Also,
     Mr. Hurley misrepresents the results of Ms. Monroe's DFEH complaint: DFEH specifically stated
27   that it "does not certify that the respondent is in compliance with the statute."  Exhibit F.
     Moreover, the offer to move Ms. Monroe to another unit in a non-smoking building is
28   disingenuous, as Defendants are fully aware that Ms. Monroe can only move to a unit that is
     within OCHA's payment standard and Defendants have no nonsmoking units that qualify.

-7-

1  housing quality standards. *Id.* If Ms. Monroe does not find such a unit within the

2  time allotted by OCHA, she will lose her voucher. *Id.* at ¶13. She has thus far

3  searched for an alternative unit without success. *Id.* at ¶25.

4       Even if Ms. Monroe finds a replacement unit, it will not be an adequate

5  substitute for her current unit, which she spent five years on a waiting list for. Her

6  doctors, her church, and her activities are all in the area near her home. *Id.* at ¶26.

7  It is very important to her physical and mental health to have those supports nearby.

8  *Id.* However, there are very few affordable housing units in the area. *Id.*; Gonzalez

9  Decl. at ¶4. The few that Ms. Monroe knows of have long waiting lists. Monroe

10  Decl. at ¶26. Any unit that Ms. Monroe would be able to find within a reasonable

11  period of time would be far from her support system, and the resulting disruption

12  would be extremely detrimental to her physical and mental health. Gonzalez Decl.

13  at ¶13, Monroe Decl. at ¶26-27.

14       The prospect of imminent homelessness, the threat of an unlawful detainer

15  action, and the risk of losing her Section 8 voucher have caused Ms. Monroe an

16  extreme amount of anxiety, emotional distress, and mental anguish. Monroe Decl.

17  at ¶29. She is receiving treatment for the decline in her mental health caused by

18  Defendants' actions. *Id.* at ¶30.

19  **III.   LEGAL ARGUMENT**

20       The basic function of an injunction issued before trial is "to preserve the

21  *status quo* pending a determination on the merits." *Chalk v. U.S. Dist. Ct.,* 840 F.

22  2d 701, 704 (9th Cir. 1988). A plaintiff seeking a temporary restraining order or

23  preliminary injunction must establish 1) that the plaintiff is likely to succeed on the

24  merits; 2) that the plaintiff is likely to suffer irreparable harm in the absence of

25  preliminary relief; 3) that the balance of equities tips in the plaintiff's favor; and 4)

26  that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, 129

27  S.Ct. 365, 374 (2008); *see also Los Angeles Unified Sch. Dist. v. U.S. Dist. Court,*

28  650 F.2d 1004, 1008 (9th Cir. 1981) (holding that this standard applies to both

-8-

temporary restraining orders and preliminary injunctions).  An injunction before trial is necessary here to preserve the status quo pending a determination on the merits, and each of these elements is met here.

### A. Plaintiff Is Likely to Succeed on the Merits of her Claims

Ms. Monroe is likely to succeed on the merits of her claims.  Defendants are evicting Ms. Monroe, a senior citizen with physical and mental disabilities, for asking her neighbors on a very limited number of occasions not to smoke near her due to her disabilities.  Defendants also admit that they are evicting Ms. Monroe for asking Defendants to accommodate her disabilities.  Federal and state law clearly prohibit discrimination in housing on the basis of disability, protect tenant's rights to ask for disability accommodations, and prohibit retaliation against tenants for exercising their fair housing rights.  Moreover, the notices to vacate issued to Ms. Monroe are invalid on their face, as they do not provide Ms. Monroe with the 90 day's notice required by California law.

### 1. Plaintiff Is Likely to Success on Her Fair Housing Act Claims and Related State Law Claims

### a. The Fair Housing Act

The federal Fair Housing Act prohibits discrimination against qualified individuals with disabilities.  42 U.S.C. § 3604.  A housing provider may not refuse to rent to a tenant because of the tenant's disability and may not discriminate in the terms, conditions, or privileges offered to a tenant because of the tenant's disability.  42 U.S.C. § 3604(a) and (b).  Federal regulations specifically proscribe evicting a tenant based on the tenant's disability.  24 C.F.R. 100.60.

The Fair Housing Act further provides that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [a person with a disability] an equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To prevail on a claim for failure to provide reasonable accommodation, a plaintiff must

-9-

1  establish that (1) he has a disability within the meaning of 42 U.S.C. § 3602(h) and

2  that the defendant knew or should have known of this fact; (2) that an

3  accommodation may be necessary to afford the person with a disability an equal

4  opportunity to use and enjoy the dwelling; (3) that such accommodation is

5  reasonable; and (4) that the defendant refused to make the accommodation. *United*

6  *States v. Cal. Mobile Home Park Mgmt. Co. II*, 107 F.3d 1374, 1380 (9th Cir.

7  1997).

8      The Fair Housing Act additionally provides that retaliation against parties

9  who exercise rights protected by the Fair Housing Act is unlawful. 42 U.S.C. §

10  3617.

11      The U.S. Supreme Court has ruled that the Fair Housing Act must be

12  interpreted with a "generous construction" in order to give the law its intended

13  vitality. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 212 (1972).

14      The Fair Housing Act protects anyone who has "a physical or mental

15  impairment which substantially limits one or more of such person's major life

16  activities" from discrimination on the basis of disability. 42 U.S.C. § 3602(h)(i).

17  Ms. Monroe's respiratory impairments and major depression qualify her for

18  protection under the Fair Housing Act because these impairments substantially limit

19  major life activities. At all relevant times, Defendants knew or should have known

20  of Ms. Monroe's physical and mental disabilities and knew or should have known

21  that Ms. Monroe was approaching her neighbors regarding second-hand tobacco

22  smoke because of her disabilities. In fact, Defendants have provided a number of

23  accommodations of Ms. Monroe's disability-related need to avoid second-hand

24  tobacco smoke during her tenancy.

25      None of Ms. Monroe's conduct in asking her neighbors to avoid smoking

26  near her or in asking whether Defendants had informed them of her sensitivity to

27  second-hand tobacco smoke rises to the level of harassment. Evicting her for such

28  low-level conduct, which is directly connected to her disability, is discrimination on

-10-

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

the basis of disability. Evicting her based on the fact that some of her neighbors find it disturbing to be approached by a person with a disability is likewise discrimination on the basis of disability. To the degree that Plaintiff's conduct bothers Defendants, it would be a reasonable accommodation to nonetheless allow Plaintiff to continue living in her unit.

Evicting Ms. Monroe for conduct protected by the Fair Housing Act, such as requesting disability accommodations, constitutes retaliation proscribed by the Fair Housing Act. Ms. Monroe requested that Defendants create a smoke-free housing environment as an accommodation of her disabilities; in June 2005 she wrote in a letter to Defendants that she believed "this could be done in a positive and fair manner." Monroe Decl. at ¶21. According to Defendants, their understanding was that Ms. Monroe was asking them to evict smoking tenants, which they could not do, and so Defendants decided to terminate her tenancy. Exhibit E. Even if Defendants' belief was genuine, the Fair Housing Act protects the ability of tenants to make disability accommodation requests, even if it turns out that the requested accommodation is not feasible under the circumstances. A housing provider presented with a disability accommodation request that is not reasonable may deny the request – but the provider may not then turn around and evict the tenant simply for making it. Such an eviction is retaliatory and in violation of the Fair Housing Act.

This case is analogous to *Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001), where the City of Lakewood decided not to renew its contract with the Fair Housing Foundation of Long Beach (FHF) because of FHF's aggressive fair housing advocacy efforts. There, the Ninth Circuit held that the failure to renew an annual contract could be the basis for a retaliation claim under FEHA and the Fair Housing Act. *Id.* at 1126-28. The Court held that the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applied to such a case: to establish a prima facie case of retaliation, a

-11-

1    plaintiff had to show that 1) he engaged in protected activity; 2) the defendant

2    subjected him to an adverse action; and 3) a causal link existed between the

3    protected activity and the adverse action. *Walker*, 272 F.3d at 1128. Here, all

4    elements are met. Ms. Monroe engaged in the protected activity of asking for

5    disability accommodations; Defendants subjected her to the adverse action of

6    terminating her tenancy; and Defendants admit that the former caused the latter.

7         Defendants are expected to argue that they have been exonerated already by

8    the California Department of Fair Employment and Housing (DFEH), which closed

9    a complaint filed by Ms. Monroe. In fact, DFEH was unable to conclude either that

10   "the information obtained establishes a violation of the statue" or "that the

11   respondent is in compliance with the statute." Exhibit F. This is hardly a

12   surprising conclusion given that Ms. Monroe is an unsophisticated individual who

13   filed her complaint without assistance and Defendants are professionals who were

14   represented by Greg Hurley, an attorney experienced in defending corporations

15   against disability discrimination claims. *See*

16   http://www.gtlaw.com/People/GregoryFHurley. Because of her lack of

17   sophistication, Ms. Monroe was unable to present the facts of her case to DFEH

18   effectively. Moreover, events have occurred since DFEH closed the complaint

19   which strongly demonstrate that Defendant's termination of Ms. Monroe's tenancy

20   was discriminatory.

21        Finally, it is important to note that Defendants are not immunized from

22   compliance with the Fair Housing Act merely because they have granted

23   accommodations of Ms. Monroe's disabilities in the past. Defendants have taken

24   some steps, such as sending notices to Ms. Monroe's immediate neighbors

25   regarding her sensitivity to second-hand tobacco smoke, to accommodate her

26   disability. However, taking such measures does not then entitle Defendants to

27   decide that they have tired of accommodating Ms. Monroe and may evict her in

28   order to avoid having to respond to any future accommodation requests. A

-12-

1  landlord's obligation to comply with the Fair Housing Act is continuous – there is
2  no point at which violations become permissible.

### b.  Related State Law Claims

4      Ms. Monroe's other claims have similar components.  The Court has found
5  that "an analysis under FEHA mirrors the analysis under the federal Fair Housing
6  Act," and that the same issues arise with Unruh Act and Disabled Persons Act
7  Claims in the housing context."  *California Housing Rights Ctr. V. Los Feliz*
8  *Towers Homeowners Ass'n*, 426 F. Supp. 1061 (C.D. Cal. 2005).  The definition of
9  disability is broader under California law than under federal law, so Ms. Monroe
10  qualifies for protection as a person with disabilities under state law as well.  Cal.
11  Gov't Code §12926.

12      The California Fair Employment and Housing Act (FEHA), which is
13  comparable in large measure to the federal Fair Housing Act, prohibits
14  discrimination against qualified individuals with disabilities.  It provides in
15  pertinent part:

16          "Discrimination" . . . includes refusal to . . . rent, or lease
17          housing accommodations; . . . includes any other denial
18          or withholding of housing accommodations; . . . includes
19          provision  of  inferior  terms,  conditions,  privileges,
20          facilities,  or  services  in  connection  with  those  housing
21          accommodations; includes harassment in connection with
22          those housing accommodations; includes the cancellation
23          or termination of a . . . rental agreement; . . . and includes
24          refusal  to  make  reasonable  accommodations  in  rules,
25          policies,   practices,   or   services   when   these
26          accommodations  may  be  necessary  to  afford  a  disabled
27          person equal opportunity to use and enjoy a dwelling.

28  Cal. Gov't Code §12927.

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

1    The California Disabled Persons Act ("DPA") prohibits discrimination in

2  housing against persons with disabilities and provides that they are entitled to full

3  and equal access, as other members of the general public, to all housing

4  accommodations offered for rent or lease. Cal. Civ. Code § 54.1 (b).  The DPA also

5  requires that any person renting, leasing, or otherwise providing real property for

6  compensation shall not refuse to make reasonable accommodations in rules,

7  policies, practices, or services, when those accommodations may be necessary to

8  afford individuals with a disability equal opportunity to use and enjoy the premises.

9  Cal. Civ. Code § 54.1 (b)(3)(B).

10    As with the Fair Housing Act, Defendants have violated the California Fair

11  Employment and Housing Act and Disabled Persons Act by evicting Ms. Monroe

12  for asking her neighbors to avoid smoking near her due to her disabilities and for

13  making disability accommodations requests.

14    The Unruh Civil Rights Act, section 51 of the California Civil Code,

15  prohibits "business establishment[s]" from discriminating against any person who

16  has, or is perceived to have, a physical or mental disability.  Defendant Irvine

17  Company, LLC, and Defendant Irvine Company Apartment Communities, Inc., are

18  both "business establishments" and are subject to the Unruh Act. Section 51(b) of

19  the California Civil Code provides:  "All persons within the jurisdiction of this state

20  are free and equal, and no matter what their ... disability ... are entitled to the full

21  and equal accommodations, advantages, facilities, privileges, or services in all

22  business establishments of every kind whatsoever." In doing the things herein

23  alleged, Defendants have violated Plaintiff's right to fair housing under the Unruh

24  Act, in that Defendants discriminated against Plaintiff based on her disability in the

25  operation of the property, a business establishment. The conduct of Defendants

26  alleged herein constitutes a denial of full and equal access to housing

27  accommodations to Plaintiff within the meaning of Cal. Civil Code § 51 et seq.

28

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER

### 2. Plaintiff Is Likely to Succeed on her Cal. Civ. Code § 1954.535 Claim for Declaratory Relief

California Civil Code § 1954.535 provides that owners who terminate or fail to renew a contract with a government agency that provides for rent limitations to a qualified tenant shall give the tenant at least 90 days written notice of the effective date of the termination. Landlords must comply with the 90-day notice provision of Cal. Civ. Code § 1954.535 in order to terminate a tenancy agreement with a Section 8 tenant. *Wasatch Prop. Mgmt. v. Degrate*, 35 Cal.4th 1111, 1115 (2005). On their face, the April 27, 2010 and April 26, 2010 "60-Day Notice of Lease Termination" issued to Plaintiff by Defendants do not comply with Cal. Civ. Code § 1954.535 and are therefore invalid.

### 3. Plaintiff Is Likely to Succeed on her Cal. Bus. & Prof. Code § 17200 Claim

California Business and Professions Code §§ 17200 and 17203 authorize the Court to enjoin "[a]ny person who engages, has engaged, or proposes to engage" in unlawful, unfair, or fraudulent business practices. Defendants propose to evict Ms. Monroe on the basis of notices to vacate which are discriminatory and invalid; such business practices are unfair and illegal. This Court should enjoin Defendants from evicting Ms. Monroe on this basis as well.

### B. Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

Plaintiff Susan Monroe is likely to suffer irreparable harm because without injunctive relief, Defendants will proceed with their discriminatory and retaliatory eviction and she will be rendered homeless.

Irreparable injury is presumed where, as here, defendants engage in acts or practices prohibited by a statute that provides for injunctive relief. The Ninth Circuit has held that "where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the

-15-

defendant's violation." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001). This holding was applied by the District Court in *Housing Rights Center v. Donald Sterling Corp.*, 274 F.Supp.2d 1129, 1140 (C.D. Cal. 2003) (Matz, J.), which held that "[i]rreparable injury is presumed from the fact of discrimination in violation of the Fair Housing Act." As was the case in *Housing Rights Center v. Sterling*, Plaintiff has established a likelihood of success on the merits in her Fair Housing Act claim, and the Court should presume that the requirement of irreparable injury has also been met. Ms. Monroe has also established that she is likely to succeed on the merits of her state law civil rights claims. The federal Fair Housing Act and the California Fair Employment and Housing Act, Unruh Civil Rights Act, and California Business and Professions Code §17200 all provide for the availability of injunctive relief, and irreparable injury should be presumed.

Moreover, the loss of one's home unquestionably is irreparable injury. *See, e.g., Brown v. Artery Org.*, 654 F. Supp. 1106, 1118-1119 (D.D.C. 1987) ("It is axiomatic that wrongful eviction constitutes irreparable injury."); *Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774 (11th Cir. 1984) ("irreparably injury is suffered when one is wrongfully evicted from his home. Real property and especially a home is unique. These plaintiffs suffer irreparably if they must live in inadequate, often health endangering housing for any period of time as a consequence of a wrongful ejectment."); *Edwards v. Habib*, 366 F.2d 628, 631 (C.A.D.C. 1965) ("Certainly being evicted into the street is irreparable damage. Respondent suggests that petitioner can raise money for a supersedeas from charitable institutions. I think petitioner need not be relegated to charitable institutions as long as a court sits to enforce her rights."); *Price v. City of Stockton, Calif.*, 394 F. Supp. 2d 1256, 1269 (E.D. Cal. 2005) (holding that "it does not take much more than common sense" to see that even short-term homelessness causes irreparable injury). The loss of housing poses even greater harm in a community which does not have a significant

-16-

amount of low-income housing. *Mitchell v. U.S. Dep't of Housing and Urban Dev.*, 569 F. Supp. 701, 704-5 (N.D. Cal. 1983). Likewise, the attendant psychological injury is irreparable. *See, e.g., Chalk*, 840 F. 2d at 709 (holding that emotional stress, depression, and reduced sense of well-being met the requirement of irreparable injury in an employment discrimination case); *see also* Gonzalez Decl. at ¶¶18-19.

Defendants have issued Ms. Monroe two 60-day notices to vacate her rental unit. Serving a tenant with a notice to vacate is the first step in the eviction process. If the tenant does not vacate by the deadline contained in the notice, the landlord may file an unlawful detainer action in state court. Here, the April 29, 2010 notice to vacate states that Ms. Monroe's lease will terminate "effective on June 28, 2010." At any time after that date, Ms. Monroe faces an imminent risk of Defendants filing an unlawful detainer action against her. Within twenty days of her response to such a lawsuit, the court would set a trial date at which Ms. Monroe would risk the loss of both her current home and her Section 8 voucher. Cal. Code Civ. Proc. §1170.5(a). The only way to avoid such harm would be for Ms. Monroe to vacate her unit voluntarily before June 28, 2010, but at this time she has no place else to go and would be rendered homeless.

## C. The Balance of Equities Favors Injunction

In assessing the third factor, the relative hardship to each party, the court must consider the impact the injunction may have on the respective parties. Here, there is no impact of any consequence to Defendants because Ms. Monroe's unit will continue to produce the full amount of rental income. Ms. Monroe will continue to pay her portion of rent to Defendants, and OCHA is legally obligated to continue paying its portion to Defendants until Ms. Monroe either voluntarily vacates or is evicted through court process. Federal regulations governing the administration of the federal Section 8 subsidy program provide that "if the owner has commenced the process to evict the tenant, and if the family continues to reside

-17-

1  in the unit, the P[ublic] H[ousing] A[uthority] <u>must continue to make housing</u>

2  <u>assistance payments to the owner</u> in accordance with the HAP contract until the

3  owner has obtained a court judgment or other process allowing the owner to evict

4  the tenant." 24 C.F.R. § 982.311(b) (emphasis added).  Indeed, there can be little

5  hardship to Defendants to continuing the status quo, as Ms. Monroe has been a

6  tenant of the Irvine Company since 2002 and a resident of her current unit since

7  2007.  The Irvine Company's sole interest in Ms. Monroe's unit is financial, and its

8  revenue stream from the unit will continue uninterrupted.

9     By contrast, the hardship to Ms. Monroe of allowing Defendants to terminate

10  her tenancy is great. As explained above, Ms. Monroe faces homelessness if she

11  leaves her unit by June 28, 2010, and an unlawful detainer action if she stays.  An

12  unlawful detainer in and of itself would make it much more difficult for her to ever

13  find housing again, and if she lost the proceeding she would likely lose her Section

14  8 voucher – thereby insuring her a future of at best paying most of her entire

15  income each month for substandard housing, and at worst living on the street.

16  Gonzalez Decl. at ¶¶9, 17.  If Ms. Monroe does vacate her unit by June 28, 2010,

17  she has no place to go and will be homeless.  If she cannot find a unit where she can

18  use her Section 8 voucher within a short period of time, she will lose the voucher.

19  Gonzalez Decl. at ¶¶7-8.

20     Additionally, Ms. Monroe spent five years on a waiting list for her current

21  unit, which is offered at below market rent as part of a program to provide housing

22  to very low income people.  Such units are extraordinarily rare in this area, and it is

23  certain that Ms. Monroe would spend years on another waiting list before she

24  qualified for another such unit.  Gonzalez Decl. at ¶¶4-5; Monroe Decl. at ¶26. In

25  her current unit, she is able to access medical, social, and other support services she

26  needs because of her disabilities.  If she were forced to relocate, her ability to

27  access these services would be disrupted, causing a likely decline in her physical

28  and mental health.  Gonzalez Decl. at ¶13, Monroe Decl. at ¶26-27.

-18-

1   Finally, simply being forced to move from her home would be a significant

2   hardship for Ms. Monroe.  Monroe Decl. at ¶28.  She cannot physically move her

3   belongings, and does not have the means to pay for a moving company, nor does

4   she have a place to put her belongings.  *Id.*  Such a move would also cause a great

5   deal of stress and anxiety for Ms. Monroe and worsen her mental health. Gonzalez

6   Decl. at ¶¶10, 18-19; Monroe Decl. at ¶27.

7   **D. An Injunction Is in the Public Interest**

8   Enjoining Defendants from evicting Ms. Monroe is in the public interest.

9   Society as a whole has an interest in the fair housing laws being respected, in the

10   eradication of discrimination against people with disabilities, and in the ability of

11   people to exercise their fair housing rights without fear of retaliation.  These

12   purposes would be frustrated if Defendants were permitted to press forward with

13   their wrongful and discriminatory eviction.  As the U.S. Supreme Court has said,

14   "The person on the landlord's blacklist is not the only victim of discriminatory

15   housing practices; it is, as Senator Javits said in supporting the bill, 'the whole

16   community." *Trafficante*, 409 U.S. at 368.  There is also a public interest in

17   preserving housing stability for people who are indigent, for senior citizens, and for

18   people with disabilities.  Each additional person who is homeless or experiences a

19   decline in physical and mental health further strains the limited resources of social

20   service providers and other social institutions.  *See* Gonzalez Decl. at ¶¶14-16.

21   **E. Plaintiff Should Not Be Required to Give Security**

22   Because there can be no financial damage to Defendants as a result of issuing

23   the requested temporary restraining order, the Court should find that Plaintiff is

24   required to pay $0 in security pursuant to Fed. R. Civ. Proc. 65(c), which provides

25   that the court may issue a preliminary injunction or temporary restraining order

26   only if the movant gives security in an amount that the court considers proper to

27   pay the costs and damages sustained by any party found to have been wrongfully

28

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

enjoined or restrained.  Ms. Monroe is also indigent; imposition of a bond
requirement would be equivalent to a denial of this application.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant
a temporary restraining order to maintain the status quo and prevent Defendants
from filing an unlawful detainer action against Plaintiff.  Plaintiff also requests that
the Court set a hearing regarding an order by the Court to show cause why a
preliminary injunction should not issue restraining Defendants from evicting
Plaintiff until the resolution of this matter.

Dated:  June 23, 2010                    **DISABILITY RIGHTS LEGAL CENTER**

By: _____
Autumn M. Elliott
Attorneys for Plaintiff Susan Monroe

*EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

# Exhibit A

October 19, 2009

Ms. Susan Monroe
1147 Corella
Newport Beach, CA 92660

Dear Susan:

This letter is in response to your on-going health concerns that you shared with our office staff as well as with Yunmi Martin on September 30, 2009.  As you know, when you relocated within the Newport North community in November of 2007 from 2621 San Marco to 1147 Corella, we informed you that we would not be able to guarantee a smoke free environment at any location within the community.

We have tried to assist you with your request to eliminate smoking by your neighbors by sending correspondence to them and relaying (with your permission) your smoke sensitivity and have asked them for their continued consideration.

During your phone conversation with Yunmi Martin, you stated that both the residents at 1142 and 1151 Corella were unaware of your smoking concerns.  Please know that we have contacted both residents and reminded them of your sensitivity and asked if they would refrain from smoking if at all possible.  The residents let us know that they will take this into consideration.  Additionally, we also delivered personal letters to each resident in your building again reminding them that we have a resident who has sensitivity to second hand tobacco smoke and smoke producing substances.

Please know that we have received complaints from residents that you have pestered them about smoking.  These residents have stated that they are very uncomfortable with you approaching them to discuss health issues regarding smoking and ask that you stop this immediately.  Please know that harassment of your neighbors is a violation of the terms of your lease, and if not abated, could result in termination of your residency at Newport North Apartments.  We feel that we have made a good faith effort to assist you in regards to your smoking concerns and ask that if you have any future concerns with your neighbors that you contact the leasing office.

It is our goal to continue to make every effort to accommodate your request, but as we have previously stated, we currently do not offer a smoke-free living environment at Newport North Apartments.

As previously offered, should you wish to pursue alternative living arrangements outside of Newport North Apartments, we will allow you to break your lease agreement at any time without notice and without penalty.

We are always available to assist you should you have any questions or concerns.

Sincerely,

Fred Geraghty
Community Manager

Cc: Yunmi Martin

2 Milano
Newport Beach, CA 92660
TEL: 949.720.8765
FAX: 949.720.1598
newportnorth@irvinecompany.com



THE IRVINE COMPANY
APARTMENT COMMUNITIES
Rental-Living.com

# Exhibit B



**THE IRVINE COMPANY**
**APARTMENT COMMUNITIES**

April 28, 2010

RE:  **60-Day Notice of Lease Termination**

Resident(s): Susan Monroe

Premises Address:     1147 Corella _____

You are currently on a Month-to-Month lease term.  In accordance with Section 30 of
the Lease, we have elected to terminate your lease effective on _____ 06/27/10 _____
This means that you will have to vacate your apartment at that time.

We have enclosed a copy of the "Move-Out Information Letter" to assist you in
planning for your move.

We thank you for your residency at _____ Newport North _____ .

If you have any questions regarding this letter or the move-out process, please call us a
_____ 949-720-8765 _____ .

Sincerely,

Fred Geraghty
Community Manager

# Exhibit C



# THE IRVINE COMPANY
## APARTMENT COMMUNITIES

April 29, 2010

RE: 60-Day Notice of Lease Termination

Resident(s): Susan Monroe

Premises Address:  1147 Corella Newport Beach CA 92660

You are currently on a Month-to-Month lease term. We have elected to terminate your lease effective on June 28, 2010 with reason(s) stated below:

**The Community has chosen not to renew your lease because of your continued violations after warnings of the terms of your lease and the Community's policies. These violations include harassing other tenants and breaching the covenant of quiet enjoyment that all tenants are expected to abide by.**

We have enclosed a copy of the "Move-Out Information Letter" to assist you in planning for your move.

We thank you for your residency at Newport North.

If you have any questions regarding this letter or the move-out process, please call us at 949-720-8765.

Sincerely,

Fred Geraghty
Community Manager
Newport North Apartment Homes

# Exhibit D



**Autumn M. Elliott**
Staff Attorney
Direct Line: 213-736-8345
Autumn.Elliott@LLS.edu

www.disabilityrightslegalcenter.org

June 16, 2010

Fred Geraghty                                              *Via Facsimile and Certified Mail*
Community Manager
Newport North Apartment Homes
2 Milano
Newport Beach, CA 92660
Fax: (949)720-1598

**Re: Disability Accommodations for Susan Monroe**

Dear Mr. Geraghty:

Please be advised that the Disability Rights Legal Center has been retained to represent the interests of Susan L. Monroe, who resides at 1147 Corella, Newport Beach, CA. The Disability Rights Legal Center is a non-profit disability rights law firm that enforces the civil rights of individuals with disabilities under the Americans with Disabilities Act (ADA) and other disability discrimination laws. Our office litigates both individual and class action cases that are designed to address systematic discrimination in all aspects of society.

The purpose of this correspondence is to provide you with a description of Ms. Monroe's disability discrimination claims against The Irvine Company. Furthermore, this correspondence formally requests that you address these claims.

**I.    BACKGROUND**

Susan Monroe has a number of health problems, including asthma, a physical disability that affects her respiratory system. She also receives Supplemental Security Income (SSI) due to her depression. Exposure to tobacco through second-hand smoke worsens her physical and mental health. Among other issues, tobacco smoke triggers her asthma. The negative impact that tobacco smoke has on her health is extremely stressful, which worsens her mental health condition.

The Irvine Company has been aware of Ms. Monroe's disabilities and resulting sensitivity to second-hand tobacco smoke for years. In June 2005, for instance, Ms. Monroe submitted a request to be moved from her unit in Cornell Court Apartments (owned and operated by the Irvine Company) due to the recurrent health problems she experienced there as a result of second-hand smoke. She has communicated her disability-related need to be protected from second-hand tobacco smoke to the Irvine Company repeatedly since that time, and has also provided verification from her doctors. Irvine Company property management has told her that they would make other residents

DISABILITY RIGHTS LEGAL CENTER
6/16/2010
Page 2 of 6

of the Newport North Apartment complex, where she now resides, aware of her health-related need to avoid second-hand tobacco smoke.

On a very limited number of occasions Ms. Monroe has approached her neighbors to ask that they not smoke near her unit or near her in common areas; she has also asked a few neighbors whether the property management office had informed them about her health problems. On October 19, 2009, you sent Ms. Monroe a letter alleging that certain residents of the Newport North Apartment complex were "very uncomfortable" with Ms. Monroe approaching them regarding smoking, and that "harassment" of neighbors was a lease violation that would justify eviction.

On April 21, 2010, a Newport North resident who parks her vehicle in front of Ms. Monroe's unit exited her car while smoking. Ms. Monroe asked the woman whether the property manager had informed her that Ms. Monroe was sensitive to tobacco smoke. One week later, you sent Ms. Monroe a letter dated April 27, 2010 stating that her tenancy would be terminated in 60 days. You then sent a second letter dated April 29, 2010 clarifying that her tenancy was being terminated due to the alleged harassment of her neighbors.

## II.   MS. MONROE'S FEDERAL LAW CLAIMS

The Fair Housing Act prohibits housing providers from discriminating against qualified individuals with disabilities. 42 U.S.C. § 3604. Discrimination is defined to included "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a person with a disability] an equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *see also* 24 C.F.R. § 100.204(a) ("It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.")

Ms. Monroe is a qualified individual with a disability under the Fair Housing Act because both her asthma and her mental health condition substantially limit major life activities. 42 U.S.C. § 3601(h)(1). Based on Ms. Monroe's statements and on the medical verifications she submitted, the Irvine Company knew or should have known of her disabilities. The Irvine Company likewise knew or should have known that she was approaching her neighbors regarding second-hand tobacco smoke because of her disabilities.

Despite this knowledge, the Irvine Company is terminating Ms. Monroe's tenancy simply for asking her neighbors on a very limited number of occasions not to smoke near her. Such a termination is discriminatory on its face. Ms. Monroe has done nothing that would rise to the level of "harassment." She has not approached her neighbors in an abusive or incessant manner. She has merely asked a small number of them on a limited

**PROTECTING THE POSSIBILITIES SINCE 1975**
*Founded In Memory of A. Milton Miller*

DISABILITY RIGHTS LEGAL CENTER
6/16/2010
Page 3 of 6

number of occasions not to smoke in common areas near her or her unit. In the incident that seems to have precipitated her eviction, all she asked was whether a neighbor had learned from property management that Ms. Monroe was sensitive to tobacco smoke. It may well be that some residents of the Newport North Apartment complex find it "disturbing" to be approached by a person with disabilities, but the property managers at Newport North may not solve that issue by evicting Ms. Monroe – to do so under these circumstances is discrimination prohibited by law.

If it is the Irvine Company's position that it has an extremely low threshold for what constitutes "harassment," and that its general policy is to evict anyone whose conduct falls outside of this threshold, the Fair Housing Act nonetheless obligates the Irvine Company to make an accommodate in this policy with regard to Ms. Monroe. Ms. Monroe has repeatedly made reasonable accommodation requests to the Irvine Company regarding her disability-related need to avoid second-hand tobacco smoke. Here, we request on her behalf that the Irvine Company accommodate Ms. Monroe by rescinding the 60-day notices to quit her unit and by allowing her to continue to live in her apartment. There is a clear nexus between the behavior deemed to be "harassment" by the Irvine Company and Ms. Monroe's disabilities: if not for her health conditions, she would not have approached her neighbors regarding second-hand tobacco smoke. The accommodation would be reasonable under the law as well. Allowing Ms. Monroe to stay would cause no undue financial or administrative burden on the Irvine Company, nor would it result in a fundamental alteration in the Irvine Company's services.

## III.   MS. MONROE'S STATE LAW CLAIMS

### A. California Fair Employment and Housing Act

Section 12927 of the California Government Code likewise prohibits housing providers from discriminating against people with disabilities. It also provides that "Discrimination ...includes any ...denial or withholding of housing accommodations; ...includes harassment in connection with those housing accommodations; ...and includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." Cal. Gov Code § 12927(c)(1).

The Irvine Company's violation of the federal Fair Housing Act discussed above also is a violation of the California Fair Employment and Housing Act, the comparable California state statute. As set forth above, the Irvine Company violated Ms. Monroe's rights under Cal. Gov Code § 12927 by evicting her for asking her neighbors not to smoke near her because of her disability.

919 Albany Street, Los Angeles, CA 90015   •   Telephone (213) 736-8345   •   TDD  (213) 736-8310/8311   •   Facsimile (213) 736-1428

PROTECTING THE POSSIBILITIES SINCE 1975
*Founded in Memory of A. Milton Miller*

DISABILITY RIGHTS LEGAL CENTER
6/16/2010
Page 4 of 6

### B. Unruh Civil Rights Act

California's Unruh Civil Rights Act also prohibits the Irvine Company from discriminating against individuals with disabilities. Section 51 of the California Civil Code provides that "All persons within the jurisdiction of this state are free and equal, and no matter what their...disability...are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

As set forth above, the Irvine Company violated Ms. Monroe's rights under the Unruh Act by evicting her for asking her neighbors not to smoke near her because of her disability. Under the Unruh Act, Ms. Monroe is entitled to statutory damages, in an amount up to three times her actual damages, with a minimum of $4000. She is also entitled to injunctive relief and attorney's fees. Cal. Civ. Code § 51(b) and (h).

### C. California Disabled Persons Act

California's Disabled Persons Act also prohibits the Irvine Company's discrimination against individuals with disabilities. Section 54.1 of the California Civil Code provides that "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state." Cal. Civ. Code §§54.1(b)(1).

As set forth above, the Irvine Company violated Ms. Monroe's rights under the California Disabled Persons Act by evicting her for asking her neighbors not to smoke near her because of her disability. Ms. Monroe is entitled to statutory damages, in an amount up to a maximum of three times the amount of her actual damages, with a minimum of $1000. Cal. Civ. Code § 54.3(a). Ms. Monroe is also entitled to injunctive relief and attorney's fees. Cal. Civ. Code §54.3 (a).

### IV. DEMAND

As a result of the foregoing violations, Ms. Monroe is in imminent danger of homelessness. As you know, Ms. Monroe's income is limited to what she receives from SSI. She has a home right now only because of the subsidy she receives from her Section 8 voucher and the fact that her current unit is below market rent. If she were evicted, she would be homeless until she found a new unit where she could use her Section 8 voucher. So far, she has been unable to find such a unit, and it is uncertain whether she will ever be able to given how few landlords accept Section 8 payments, how few apartments are within the voucher payment standards, and how many apartments in the area are already owned by the Irvine Company. This situation has caused Ms. Monroe enormous amounts of stress and anxiety and has exacerbated her depression.

919 Albany Street, Los Angeles, CA 90015   •   Telephone (213) 736-8345   •   TDD  (213) 736-8310/8311   •   Facsimile (213) 736-1428

**PROTECTING THE POSSIBILITIES SINCE 1975**
*Founded in Memory of A. Milton Miller*

DISABILITY RIGHTS LEGAL CENTER
6/16/2010
Page 5 of 6

Ms. Monroe demands that the Irvine Company rescind all eviction notices, notify the Orange County Housing Authority of the withdrawal of the notices, and allow her to continue living in her unit. If you do not do so by 10 a.m. on June 22, 2010, you may expect that we will file a lawsuit seeking injunctive relief, damages, and attorney's fees under the Fair Housing Act and related state laws.

If you refuse to rescind the notice before 10 a.m. on June 22, 2010, Ms. Monroe demands that the following steps be taken:

(1) That she be allowed to continue living in her unit;

(2) Training of Irvine Company personnel on the Fair Housing Act requirements and immediate implementation of a disability sensitivity training;

(3) Implementation of any other policies and procedures necessary to prevent discrimination against individuals with disabilities through the failure to provide adequate accessibility and accommodations;

(4) Damages, in addition to attorneys' fees and costs.

Discrimination against tenants with disabilities can result in substantial liability for housing providers. It will be a costly mistake for the Irvine Company not to rescind all eviction notices issued to Susan Monroe by 10 a.m. on June 22, 2010.

I would be happy to discuss this matter with you. My direct number is (213)736-8345.

Sincerely,

Autumn M. Elliott
Staff Attorney

cc:

Yunmi Martin
District Manager
The Irvine Company Apartment Communities, Inc.
110 Innovation Drive
Irvine, CA 92617

The Irvine Company
550 Newport Center Drive
Newport Beach, CA 92660

**PROTECTING THE POSSIBILITIES SINCE 1975**
*Founded In Memory of A. Milton Miller*

DISABILITY RIGHTS LEGAL CENTER
6/16/2010
Page 6 of 6

John Hanbuch, Director of Leasing
Caroline Benedict, Field Representative
Orange County Housing Authority
1770 N. Broadway
Santa Ana, CA 92706
Fax: (714)480-2822

919 Albany Street, Los Angeles, CA 90015   •   Telephone (213) 736-8345   •   TDD  (213) 736-8310/8311   •   Facsimile (213) 736-1428

PROTECTING THE POSSIBILITIES SINCE 1975
Founded In Memory of A. Milton Miller

# Exhibit E



GT GreenbergTraurig

Gregory F. Hurley
Tel 949.732.6500
Fax 949.732.6501
HurleyG@gtlaw.com

June 18, 2010

Autumn M. Elliott
Disability Rights Legal Center
919 Albany Street
Los Angeles, CA 90016
Tel: (213) 736-1031
Autumn.Elliott@LLS.edu

Re:   ***Susan Monroe claim against Newport North Apartment Homes,***
      ***DFEH#: H200910-P-0213-00-ph; 01-04/HUD#: 09-10-0214-8***

Dear Ms. Elliott:

This will respond to your July 16th letter regarding Ms. Susan Monroe, a tenant at our Newport North Community. First, we have not "evicted" Ms. Monroe. Her lease term is up and for numerous reasons we have chosen not to renew her lease. One of the reasons we can not renew her lease is her demand that we evict any of her neighbors that smoke. We can not accommodate that demand by Ms. Monroe. She moved into this Community knowing that it allows smoking and that she would have neighbors that smoke. We have repeatedly told her that she would be welcome in any of our non smoking communities.

We have accommodated Ms. Monroe's multiple demands for accommodations over many years. She filed claims with HUD and DFEH on the same issues you raise in your letter. HUD / DFEH determined that that we had complied with the requirements of the Fair Housing Act and State law, and that Ms. Monroe's claim was without merit. They have closed their investigation and issued a no further action letter based on a finding of no discrimination.

This has been a frustrating situation for the Community. Prior to first moving in with us Ms. Monroe never requested an accommodation or told us about her disability. Ms Monroe moved into two of our Communities fully understanding that those Communities allowed smoking. In September of 2007 at her request we relocated her from our Community in Cornell Court to 2621 San Marco in the present Community and then again to her present location at 1147 San Marco due to her complaints about smoking. She knew prior to moving to those units that she would have neighbors that smoked. On November 5th, 2007 we moved her within Newport North to accommodate additional complaints from her about her neighbors. We paid for all moving costs for that move and waived all penalties and charges for that move.

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BERLIN∘
BOSTON
BRUSSELS∘∘
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON∘
LOS ANGELES
MIAMI
MILAN∘∘
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PALM BEACH
COUNTY
PHILADELPHIA
PHOENIX
ROME∘∘
SACRAMENTO
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO∘∘
TYSONS CORNER
WASHINGTON, D.C.
WHITE PLAINS
ZURICH∘∘
∘OPERATES AS GREENBERG
TRAURIG MAHER LLP
∘∘STRATEGIC ALLIANCE

She has chosen to renew her lease 4 times ( 4 years) in 2 different communities we own, even though she knew that each of those communities and buildings she would be living with neighbors who smoked. For the last 4 years we have engaged in continuous attempts to accommodate her sensitivity and her complaints about her neighbors. We have paid to have her vents and windows sealed. We have offered to allow her to transfer without penalty to a non-smoking community. We have offered to allow her to terminate her lease without penalty so she can move to a non smoking community. She has rejected all of our offers. Her demand remains that we evict any tenant that smokes or who entertains a guest that smokes.

After the DFEH and HUD found that she did not have any claim for discrimination she began to harass other residents in the Community: yelling at people who are smoking in common areas well away from where she lives; pounding on the doors of residents she suspected were smokers; and insulting her neighbors. Ms. Monroe in intractable in her demand that we evict smokers. She is unwilling to engage in a realistic dialogue with us. The Community continues to attempt to engage in a dialogue with her and will continue to try to accommodate her requests. Other than her demand that we evict other tenants that smoke or who entertain guests that smoke we have accommodated every request she has made. Her are some examples, of steps that we have taken to accommodate her:

-We have spoken and written her neighbors and asked them to be very considerate about her sensitivity to smoke;

- We have sent a letter to all of the other 9 units in her building advising them that a resident with a smoking sensitivity lives in the building and asking them to be considerate of this resident;

-We have advised tenants that they should not smoke in the common areas near her unit, and have sent notices to the buildings neighboring hers (34 units) about her sensitivity and asking that they not smoke near her building;

-We have paid to move her to a different unit;

-We have paid to have her vents and windows sealed;

- We have offered to allow her to transfer without penalty to one of our non smoking communities at any time, and without penalty;

- We have offered to allow her to terminate her lease without penalty at any time so she can move elsewhere.

Ms. Monroe's demands to us were memorialized in a June 2006 letter . She demanded that in order to accommodate her sensitivity that we evict all smokers and convert the Community to "a "smoke-free" community, where the smoking of tobacco would be prohibited both in the apartments and outside in all common areas, such as parking lots, pools, and laundry rooms. For 4 years we have renewed her lease and done everything we

can to accommodate her demands but, we do not believe that it is reasonable or possible for us to evict other tenants who smoke, or who have guests that smoke, in a community that allows smoking.

DFEH and HUD have investigated Monroe's claims and determined that they are without merit and that there have been no violations of the laws and regulations you cite in your letter. HUD & DFEH recognized that there are numerous communities where Ms. Monroe can live that do not allow smoking, that we have done everything possible over many years to accommodate her demands, and that we can not evict other tenants who smoke as she demands. HUD & DFEH recognized that Ms. Monroe needs to move to a non smoking community. This conclusion is supported by the OC Housing Authority that administers her voucher.

We are happy to assist Ms. Monroe in her move to any community ( including one our ours) that does not permit smoking, and we are sorry that we can not renew her lease at Newport North. Your letter alleges that if we do not renew her lease that she will be "homeless". It is my understanding that since receiving her notice 60 days ago that she has not made any effort to look for alternative housing. Nor has she made any attempt to work with the Agency that administers her housing voucher to locate alternative housing. We remain willing to work with Ms. Monroe and, provided that it is allowed by the Housing Authority, we would be willing to allow her to stay in the Community for additional time while she locates alternative housing in a non smoking community. Please let us know if this accommodation is acceptable to Ms. Monroe.

Very Truly Yours,

s/ Gregory F. Hurley

Gregory F. Hurley

GFH:co

# Exhibit F

STATE OF CALIFORNIA – State and Consumer Services Agency ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLO  .  MENT & HOUSING

*1055 West 7th Street, Suite 1420, Los Angeles, CA 90017*
*(213) 439-6703 TTY (800) 700-2320 Fax (213) 439-6746*
*www.dfeh.ca.gov*



February 17, 2010


SUSAN MONROE
P.O. Box 12742
Newport Beach, CA 92658

RE:   H200910P0213-02-ph/0091002148
      MONROE/THE IRVINE COMPANY

Dear SUSAN MONROE:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that was filed with the Department of Fair Employment and Housing (DFEH) has recommended that the case be closed effective February 17, 2010.  Please be advised that this recommendation has been accepted.

Based upon its investigation, DFEH is unable to conclude that the information obtained establishes a violation of the statute.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this complaint.

California Government Code section 12980, subdivision (h), requires that you be advised of your right to file a civil action against the person named in your complaint.  That right is contained in Government Code section 12989.1.  You must file such an action within two years after the occurrence or the termination of the alleged discriminatory housing practice.  The computation of the two-year period does not include any time during which this complaint was pending with DFEH.

If a settlement or conciliation agreement has been signed resolving the complaint, it is likely that your right to file a private lawsuit may have been waived.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Belinda A Brown*

**Belinda Brown**
**District Administrator**

cc:    Case File

Property Supervisor
THE IRVINE COMPANY
110 Innovation Drive
Irvine, CA  92617

DFEH-700-40w(07/06)
PBRUMFILT